**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire 031431983
Jose A. Calves, Esquire 205442016
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey, 08108
(856) 854-8900
*Attorneys for Defendants County of Camden and Camden County Improvement Authority*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EARLE ASPHALT CO., LUIS SILVERIO, and ASSOCIATED BUILDERS AND CONTRACTORS NEW JERSEY CHAPTER<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY IMPROVEMENT AUTHORITY, COUNTY OF ATLANTIC and UNITED BUILDING TRADES COUNCIL OF SOUTHERN NEW JERSEY, AFL-CIO,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 1:21-CV-11162-RBK-AMD |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINITFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. ii
**INTRODUCTION** ................................................................................................................... 1
**LEGAL ANALYSIS** ............................................................................................................... 3
    **I.    PLAINTIFFS LACK STANDING TO CHALLENGE THE WHITMAN PARK PLA** 3
        **A.  Mr. Silverio and Earle Asphalt Company lack standing to challenge the Whitman Park PLA.** ................................................................................................................... 3
        **B.  ABC-NJ Lacks Standing To Challenge The Whitman Park Project PLA** ............... 7
    **II.   PLAINTIFFS HAVE NOT ALLEGED ANY VIOLATIONS OF THE FIRST OR FOURTEENTH AMENDMENTS.** ....................................................................................... 9
    **III.  PLAINTIFFS HAVE FAILED TO STATE A VIABLE ANTI-TRUST CLAIM** .. 12
**CONCLUSION** ..................................................................................................................... 14

Case 1:21-cv-11162-RBK-AMD   Document 36   Filed 10/12/21   Page 3 of 17 PageID: 917

# TABLE OF AUTHORITIES


**Cases**
*Ashcroft v, Iqbal*, 556 U.S. 662 (2009) ................................................................................................ 6
*Associated Builders & Contractors, Inc. v. San Francisco*, 981 P.2d 499 (Cal. 1999) ............... 10
*Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239 (3d Cir. 2001) ................................... 12
*Bell Atlantic Corp. v, Twombly*, 550 U.S. 544 (2007) .................................................................. 6
*Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218 (1993) .......................................................... 10
*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) ..................................................... 8
*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) .................................................................. 11
*Colfax Corp. v. Illinois State Toll Highway Authority*, 79 F.3d 631 (7th Cir.1996) ................... 10
*Connecticut Associated Builders v. Anson*, 740 A.2d 804 (Conn. 1999). ................................... 10
*F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216 (2013) ................................................. 12
*Free Speech Coal., Inc. v. Att'y Gen. United States*, 974 F.3d 408 (3d Cir. 2020) ....................... 7
*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ............................................... 7
*Iron Workers Local 3 v. NLRB*, 843 F.2d 770 (3d Cir. 1988) ...................................................... 10
*Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102 (3d Cir. 2019) ......................................................... 5, 6
*Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312 (3d Cir. 2018) .......................................................... 5
*Louisiana Power & Light Co.*, 435 U.S. 389 (1978) ................................................................... 12
*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) .................................... 6
*Master Builders of Iowa v. Polk County*, 653 N.W.2d 382 (Iowa 2002); ................................... 10
*N.C. State Bd. of Dental Examiners v. FTC*, 574 U.S. 494 (2015) .............................................. 13
*Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656 (1993) ......................................................................................................................... 8
*Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278 (3d Cir. 2002) .......... 7, 8
*Parker v. Brown*, 317 U.S. 341 (1943) ........................................................................................ 12
*Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978) ............................................................... 8
*Road-Con, Inc. v. City of Philadelphia*, 449 F. Supp. 3d 476 (E.D. Pa. 2020) ......................... 4, 5
*Rumsfeld v. Forum for Academic Institutional Rights, Inc. (FAIR)*, 547 U.S. 47 (2006) ............ 11
*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................................................ 5

**Statutes**
N.J.S.A. 52:38-3 ............................................................................................................................. 4

ii

# **INTRODUCTION**

Plaintiffs, Luis Silverio, Earle Asphalt Company, and the Associated Builders and Contractors, New Jersey Chapter ("ABC-NJ" and, collectively with Earle Asphalt Company, and Mr. Silverio, "Plaintiffs"), brought this action against Camden County, Atlantic County, the Camden County Improvement Authority ("CCIA"), and the United Building Trades Council of Southern New Jersey, AFL-CIO (the "Council" and, collectively with Camden County, Atlantic County, and the CCIA, "Defendants"), to challenge a project labor agreement ("PLA") utilized to aid the renovation of a public park in the City of Camden. Specifically, Plaintiffs allege the PLA violated their rights under the First and Fourteenth Amendments of the United States Constitution as well as federal anti-trust laws by requiring contractors on the park project to recognize a signatory union to the PLA as their exclusive bargaining representative on the project and to utilize a signatory union's referral system when hiring workers for the park project.

As a jurisdictional matter, Plaintiffs' claims fail due to lack of standing. In opposition to Defendants' moving brief, Mr. Silverio and Earle Asphalt Company claim to have standing because the challenged PLA prevented them from obtaining work on prior County projects. Further, they allege to have standing because the challenged PLA is deterring them from seeking work on any County project in the future. Lastly, ABC-NJ, a trade organization, claims standing based on the standing

1

of the other plaintiffs and as an organization in defending the rights of non-union contractors.

These arguments fail because, despite Plaintiffs' assertions, they simply did not suffer an injury due to the PLA under review.  First, Mr. Silverio was not injured by his unwillingness to join or support a union because the implemented PLA, filed by Plaintiffs with their Amended Complaint, did not require him to join or support a union.  Moreover, Plaintiffs' claim that the challenged PLA deterred them from applying from past projects and prevents them from applying for future projects is nonsensical.  Plaintiffs challenge a particular PLA, applicable only to one specific project; it could not have deterred them from seeking work on any prior or future project.  Plaintiffs failed to submit a bid on the only project governed by the PLA under review and, accordingly, it is unfounded to argue they were injured by that PLA.  While Plaintiffs' factual allegations are presumed true, the scope, applicability, and effect of the PLA they submitted with their Complaint are questions of law.  Defendants maintain an analysis of the PLA and its authorizing statute render Plaintiffs' claims impossible and therefore should be dismissed.

Similarly, Plaintiffs' substantive arguments fail because they challenge provisions of the PLA that, as a matter of law, do not violate Plaintiffs' constitutional rights.  The exclusive representation and referral system clauses are common in

PLAs across the county and Plaintiffs fail to identify an authoritative opinion anywhere striking down similar positions.

Finally, Plaintiffs' anti-trust claim is barred by the state-action doctrine, and more fundamentally, because the challenged PLA plainly does not restrict trade. Non-union contractors were provided an equal opportunity to bid on the park project and labor costs are regulated by the State's prevailing wage laws regardless of whether a PLA is in effect.

Simply put, Plaintiffs attempt to use a park project in Camden to challenge PLAs in general and further chip away at common place and fundamental provisions of labor agreements in the construction industry. The challenged provisions of the Whitman Park PLA are standard in PLAs across the county and are allowed under state and federal law. While Plaintiffs may disagree with those laws, that does not mean their constitutional rights have been violated. For these reasons, detailed further below, the Amended Complaint must be dismissed in full, with prejudice.

## LEGAL ANALYSIS

### I. PLAINTIFFS LACK STANDING TO CHALLENGE THE WHITMAN PARK PLA

**A. Mr. Silverio and Earle Asphalt Company lack standing to challenge the Whitman Park PLA.**

Plaintiffs attempt to establish standing by stretching the terms of the challenged PLA, relevant only to the Whitman Park project in Camden, to have a

deterrence effect on all past and future County projects. The first basis for standing raised in Plaintiffs' Opposition, is that Mr. Silverio suffered "past harms" in being unable to obtain work due to his refusal to join or support a union. Pl. Opp'n. Br. at pg. 1. Likewise, Plaintiffs claim Earle Asphalt Company suffered a past injury in fact, by being deterred from obtaining work on prior County projects. *Id.* at pg. 4. However, Plaintiffs are unable to explain how a PLA introduced in draft form on April 23, 2021 inflicted "past harms" by preventing them from obtaining work on prior projects. (*See* Exhibit A to Defs. Motion to Dismiss, ECF 24). Plaintiffs' opposition brief does not address the specifics of New Jersey law raised in the moving brief, namely that the New Jersey Project Labor Agreement Act limits PLAs in scope to a project-by-project basis. N.J.S.A. 52:38-1 to -7. This means that each PLA in New Jersey, as a matter of law, must be negotiated based on the specifics of a project. Consequently, this PLA is distinguished from other PLA cases where standing was predicated on a plaintiff's challenge to a series of identical PLAs. *Compare* N.J.S.A. 52:38-3; *with Road-Con, Inc. v. City of Philadelphia*, 449 F. Supp. 3d 476 (E.D. Pa. 2020) (standing based on challenge to series of PLAs required by the City). Therefore, it is nonsensical to argue Plaintiffs' standing is grounded in "past harms" when the PLA was first proposed (not signed, but merely proposed) on April 23, 2021 and Plaintiffs' Complaint was filed on May 13, 2021. (Pls. Compl., ECF 1).

Second, Plaintiffs claim both Mr. Silverio and Earle Asphalt Company have standing to seek injunctive relief because the PLA deters them from seeking work on future projects. Pls. Opp'n Br. at pgs. 2-3. First, as discussed above, New Jersey law renders this impossible as any new project will be subject to a separately negotiated PLA. Should a future PLA violate any portion of state or federal law, it must be adjudicated on its own merits, considering the facts applicable to that project.

Plaintiffs, without any legal authority, claim the right to challenge future agreements without knowing the contents, parties, or other details of that future project. Again, this is distinguishable from *Road-Con*, where a series of identical PLAs were under review; here, Plaintiffs seek to challenge future PLAs, prior to their terms ever being negotiated. That notion is unsupported by the law and contrary to Article III of the Constitution's limitation of judicial power to actual "cases" and "controversies." *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Allowing challenges to undrafted future agreements violates the rule that "a plaintiff must allege 'an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Spokeo* at 1548).

Lastly, Plaintiffs claim the PLA, even as enacted, prevents them from applying for future projects and they are "ready and able" to apply otherwise. Pl. Opp'n Br. at pg. 3. As discussed below, the PLA as enacted, even if it did apply to future projects, does not inflict any injury upon Plaintiffs. They are not required to support, aid, contribute to, or join a union so there is nothing preventing them from participating in future projects with a clean conscious.

Plaintiffs' factual allegation are accepted as true. *Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019). However, those factual allegations must state a claim to relief that is plausible. *Ashcroft v, Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. (citing *Bell Atlantic Corp. v, Twombly*, 550 U.S. 544, 560 (2007)). It is implausible to claim the Whitman Park PLA deterred Plaintiffs from applying for prior projects, because the PLA did not yet exist and would not have been applicable to such prior projects. It cannot deter them from applying for future projects, because it will not apply to such projects. Likewise, there was nothing in the PLA that prevented Plaintiffs from bidding on the Whitman Park work and yet they still chose not to. Consequently, they cannot demonstrate any concrete or particularized injury and their claims must be dismissed. *Kamal*, 918 F.3d at 110.

### B. ABC-NJ Lacks Standing To Challenge The Whitman Park Project PLA

Associational standing requires an association to show that (1) its "members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (*quoting Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). ABC-NJ cannot demonstrate that its members would otherwise have standing to sue in their own right or that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

First, as described in detail above, neither Mr. Silverio nor Earle Asphalt Company have standing to bring suit in their own right. *See* § I(A). Neither they, nor any other members, can demonstrate a stake in the resolution of the Whitman Park project and, consequently, ABC-NJ cannot be strung along into this litigation. *Free Speech Coal., Inc. v. Att'y Gen. United States*, 974 F.3d 408, 421 (3d Cir. 2020).

Second, and unaddressed in Plaintiff's opposition brief, is the prong requiring that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.* That requirement means associational standing is "improper for claims requiring a fact-intensive-individual inquiry." *Pa.*

7

*Psychiatric Soc'y*, 280 F.3d at 286; *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 289 (3d Cir. 2014) (concluding organization lacked standing to sue on behalf of its members because of the "highly individualized nature" of the claims). As discussed above, the nature of the New Jersey PLA statute necessitates an individualized approach to reviewing these agreements. An injunction against the Whitman Park PLA would have little value in determining the validity of future projects, which may contain significantly different terms and consideration.

Finally, the moving brief discussed *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) and the case on which it relies, *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978), arguing standing cannot be based on another party's failed bid, unless that standing is based on membership in a discriminated against "disfavored class." Plaintiffs respond by arguing as non-union contractors they constitute a disfavored or discriminated against class. As stated in *Ne. Florida*, "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." 508 U.S. at 666. This is not the case here, primarily because even if the Court believes non-union workers are a "disfavored class", there are no barriers as even the withdrawn draft PLA explicitly forbid

8

discrimination on the basis of union membership or lack thereof. (Exhibit B to Pls. Compl., ECF 1-1, at pg. 11, Art. 5 § 2).

Accordingly, the ABC-NJ has failed to establish associational standing because (i) neither of the remaining Plaintiffs can show standing, (ii) the PLA under review requires a fact-sensitive inquiry, and (iii) ABC-NJ cannot demonstrate a reason to defeat the general rule that a non-bidder cannot assert claims based on the denial of another's bid. *Lujan*, 504 U.S. at 561-62 ("[I]n order to establish standing . . . the plaintiff [must be] himself an object of the action or foregone action at issue.").

## II. PLAINTIFFS HAVE NOT ALLEGED ANY VIOLATIONS OF THE FIRST OR FOURTEENTH AMENDMENTS.

Put plainly, Plaintiffs' opposition brief fails to identify any authoritative precedent striking down a PLA containing similar provisions [on constitutional grounds]. Admittedly, the Supreme Court has not addressed precisely this formulation of Plaintiffs' challenge on an exclusive representation or a hiring hall clause, but as the moving brief makes clear, both are well-established practices in state law and under the NLRB and have been discussed and sanctioned in other contexts by the Supreme Court on many occasions.

Defendants' moving brief cites the *Boston Harbor* case to demonstrate precisely that point, *i.e.*, that provisions identical to that in the challenged PLA have been under review since the early 1990s and none have been struck down by a First

9

Amendment challenge. *See e.g.; Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 230 (1993) ("Boston Harbor"); *Colfax Corp. v. Illinois State Toll Highway Authority*, 79 F.3d 631, 634–35 (7th Cir.1996); *George Harms*, 137 N.J. at 14–16, 644 A.2d 76; *New York State Chapter, Inc. v. New York State Thruway Authority*, 207 A.D. 2d 26, 620 N.Y.S.2d 855, 856–57 (1994).

Further, every case that *has* addressed that issue has ruled exclusive representation clauses and union hiring requirements are not violations of the U.S. Constitution. *Associated Builders & Contractors, Inc. v. San Francisco*, 981 P.2d 499, 517 (Cal. 1999); *Master Builders of Iowa v. Polk County*, 653 N.W.2d 382 (Iowa 2002); *Connecticut Associated Builders v. Anson*, 740 A.2d 804, 811 (Conn. 1999).

This unanimity is because these provisions do not impose upon a non-union contractor's First Amendment rights. First, the exclusive representation and hiring call clauses are only in relation to work performed while on that specific job site. Moreover, even within the specific job site, workers on the project are protected by the full range of protections offered by the NLRA, including the right to decertify the signatory unions if they so wish. *Iron Workers Local 3 v. NLRB*, 843 F.2d 770 (3d Cir. 1988). Second, not only are the interactions with the signatory union limited in scope and able to be canceled, they are also limited in depth. Specifically, non-

union contractors and workers are not required to engage in any expressive actions which would trigger First Amendment protections.

The Supreme Court has consistently held a plaintiff's First Amendment associational rights are not triggered by any interaction, but only by that which serves an expressive purpose. *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000). For example, law schools were held unable to prevent military recruiters from recruiting on campus, because the limited nature of their role on campus meant they in no way imposed upon the school's "expressive associations." *Rumsfeld v. Forum for Academic Institutional Rights, Inc. (FAIR)*, 547 U.S. 47 (2006). Here, utilizing a union-run referral system or performing construction work cannot reasonably be read to be an expressive activity.

Consequently, Plaintiffs' claims fail because the challenged provision of the PLA does not violate any right guaranteed by the Constitution. Plaintiffs cannot identify any authority demonstrating otherwise and every court identified by the parties has ruled in favor of the County's position. This is not surprising because absent monetary contributions or membership, it is not defensible to argue utilizing a referral system or exclusive representation on a single project site violates the First Amendment's protections for expressive activity. Accordingly, Plaintiffs' claims fail as a matter of law and the Amended Complaint should be dismissed in full.

### III.   PLAINTIFFS HAVE FAILED TO STATE A VIABLE ANTI-TRUST CLAIM

Plaintiffs' anti-trust claim fails for two reasons: it is barred by the state-action doctrine and, on a more basic level, the PLA does not give any party a competitive advantage. The state-action doctrine is applicable here because its intent is to shield government entities from anti-trust liability when they are acting in accordance with applicable state law. *See e.g. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 255 (3d Cir. 2001); *Parker v. Brown*, 317 U.S. 341 (1943).

The Third Circuit has held "[w]hen a state clearly acts in its sovereign capacity it avoids the constraints of the Sherman Act and may act anti-competitively to further policy goals." *Bedell*, 263 F.3d at 255. This sovereign immunity is shared with local entities when their actions are authorized by state law. *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225–26 (2013) (citing *Louisiana Power & Light Co.*, 435 U.S. 389, 413 (1978)).

Here, there is no question the County's actions are authorized by state law. N.J.S.A. 52:38-3. State law explicitly addresses these concerns by stating: "The decision by the public entity to require the inclusion of a project labor agreement requirement shall not be deemed to unduly restrict competition if the public entity finds that the project labor agreement is reasonably related to the satisfactory performance and completion of the public works project . . ." *Id.* The County has included such findings in the language of the PLA itself, which is sufficient as formal

studies are not required to support the required determinations. *Sheet Metal Workers Int'l Ass'n Loc. Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F. Supp. 2d 313, 325 (D.N.J. 2009).

Plaintiffs challenge the applicability of the state-action doctrine by arguing the allegedly anti-competitive actions must be actively supervised by the State. *N.C. State Bd. of Dental Examiners v. FTC*, 574 U.S. 494, 503-04 (2015). That requirement is met by N.J.S.A. 52:38-6, which is part of the New Jersey Project Labor Agreements Act. That statute requires the New Jersey Commissioner of Labor to annually report on the effectiveness of all PLAs entered into, utilizing information obtained from monitoring required by N.J.S.A. 52:38-6.

Even where the state-action doctrine does not apply, the challenged provisions of the PLA simply do not restrict trade. The black letter of the PLA explicitly states non-union employees and contractors are equally entitled to submit bids under the amended PLA. (ECF 23-2, Article 12, § 1). Further, Plaintiffs' allegations of price-fixing fail because the labor costs are already regulated by New Jersey prevailing wage laws. Consequently, these costs are "fixed" by state statute, regardless of whether a PLA is in effect or not. *See* §IV of Union's Br., ECF 34).

Plaintiffs' allegations as pled in the Amended Complaint do not constitute an anti-trust violation as each allegedly illegal action is explicitly authorized and regulated by New Jersey state law. These laws place all parties on an equal footing

13

and, consequently, Defendants request the Court dismiss the anti-trust claims with prejudice.

## CONCLUSION

Plaintiffs' claims fail as a matter of law. The allegations in the Amended Complaint fail to state a cognizable claim, are prevented by the state-action immunity doctrine, and are barred by Plaintiffs' lack of standing. Accordingly, Defendants move the Amended Complaint be dismissed in its entirety, with prejudice.

**BROWN & CONNERY, LLP**

By: */s/ William M. Tambussi*
William M. Tambussi, Esquire

*/s/ Jose A. Calves*
Jose A. Calves, Esquire

DATED: October 12, 2021