NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| Earle Asphalt Co., *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>County of Camden, *et al.*,<br><br>        Defendants. | Civil No. 21-11162 (RBK/AMD)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendants Camden County Improvement Authority and County of Camden's Motion to Dismiss, (ECF No. 24), and Defendant United Building Trades Council of Southern New Jersey, AFL-CIO's Motion to Dismiss, (ECF No. 25). For the reasons set forth below, Defendants' Motions to Dismiss are **GRANTED**.

**I.    BACKGROUND**

    **A.  Factual Background**

Plaintiffs Earle Asphalt Co., Luis Silverio, and Associated Builders and Contractors New Jersey Chapter (collectively "Plaintiffs") have filed suit against the County of Camden, Camden County Improvement Authority, and United Building Trades Council of Southern New Jersey, AFL-CIO (collectively "Defendants")[1], challenging the terms of a project labor agreement ("PLA") negotiated and entered into by Defendants as part of a project to renovate Whitman

---

[1] The Amended Complaint also names Atlantic County as a defendant. However, Plaintiffs have voluntarily dismissed their claims against Atlantic County, (ECF No. 35), and reinstated those claims in a related, but separate matter, *see Earle Asphalt Co., et al v. County of Atlantic, et al*, No. 1:21-cv-18355 (RBK/AMD) (D.N.J. May 13, 2021).

1

Park in Camden. *See* (ECF No. 23, "Am. Compl." ¶¶ 14, 15). Plaintiffs seek declaratory and injunctive relief, as well as damages. (*Id.* ¶¶ 49, 52, 65, 66).

### i. The Parties

Plaintiff Earle Asphalt Co. ("Earle") is a non-union contractor. (Am. Compl. ¶¶ 4, 34). Plaintiff Luis Silverio is a non-union tradesman and an employee of Earle. (*Id.* ¶ 5). Plaintiff Associated Builders and Contractors New Jersey Chapter ("ABC NJ") is the New Jersey chapter of a national association that represents 21,000 merit-shop construction and related firms. (*Id.* ¶¶ 6, 39). ABC NJ is asserting associational standing on behalf of its members. (*Id.* ¶ 40).

Defendant Camden County ("County" or "Camden") is a municipal corporation in New Jersey. (Am. Compl. ¶ 7). Defendant Camden County Improvement Authority ("CCIA") is an independent public agency created by the Camden County Board of Commissioners. (*Id.* ¶ 8). Defendant United Building Trades Council of Southern New Jersey, AFL-CIO ("Trades Council") is an organization of labor unions. (*Id.* ¶ 10). Defendants Camden County and CCIA entered into the PLAs at issue here with Defendant Trades Council as part of a municipal public-works project. (*Id.* ¶¶ 14, 15).

### ii. The PLAs

On April 23, 2021, Camden County issued an invitation to bid on a project to renovate Whitman Park in Camden, New Jersey ("the Project"). (Am. Compl. ¶ 14). A PLA ("original PLA") was included in that initial bid package. (*Id.* ¶ 15). The original PLA required, *inter alia*, that local signatory unions be recognized as the "sole and exclusive bargaining representatives of all craft employees … working on the Project…." (Am. Compl., Ex. 1, Art. 4 § 1). The PLA also required contractors on the Project to hire through the job-referral systems, or hiring halls, of the signatory union(s), (Am. Compl., Ex. 1, Art. 5), and mandated that contracted employees join,

and remain, members of a Council-affiliated, signatory union while working on the Project, (Am. Compl., Ex. 1, Art. 12 § 1). Additionally, the original PLA required that employees hired on the Project comply with the union security provision contained in the collective bargaining agreement of the referring union. (Am. Compl., Ex. 1, Art. 5 § 11). Only those contractors and subcontractors who agreed to these terms were eligible to work on projects subject to the PLA at the time that the Complaint was filed in this case. (*Id.* ¶ 17). Plaintiffs allege that Camden County had been imposing PLAs "similar" to the original PLA on other bid invitations "for many years" up until Plaintiffs filed the instant suit. (*Id.* ¶ 16).

On May 13, 2021, Plaintiffs filed suit against Defendants to enjoin enforcement of the original PLA and for damages. (ECF No. 1, "Compl."). On May 20, 2021, Camden County amended the PLA ("revised PLA") and reissued the Project's bid package. (Am. Compl. ¶ 23, Ex. 2). The revised PLA omits the requirements that contracting employees (1) become union members for the duration of their time working on the Project and (2) comply with union security provisions. (Am. Compl ¶ 24., Ex. 2, Art. 12 § 1). However, the revised PLA still mandates that contracted employees recognize a Trades Council-affiliated union as their sole and exclusive bargaining representative, (Am. Compl. ¶ 25, Ex. 2, Art. 4 § 1), and compels contractors and subcontractors to utilize the unions' job-referral systems, (Am. Compl. ¶ 26, Ex. 2, Art. 5). Plaintiffs filed an Amended Complaint challenging both the original and revised PLAs on August 16, 2021. (Am. Compl.).

In their Amended Complaint, Plaintiffs allege that the original and revised PLAs violate their Constitutional rights and the Sherman Act. (*Id.* ¶¶ 45–67). They claim that the PLAs have deterred and prevented Earle and Mr. Silverio from obtaining work from Camden County in the past. (*Id.* ¶¶ 36, 37). Earle alleges that it continues to suffer injury due to the PLAs because it is

ineligible to work "on any public-works project subject to the … PLAs unless it" accepts a Trades Council-affiliated union as the sole representative of its employees and hires from a union's job-referral system, (*id.* ¶ 34), despite being "ready and able to apply" for such work, (*id.* ¶ 35). Mr. Silverio similarly claims that he is injured by the PLAs' requirements that he obtain employment through a union job-referral system and accept union representation if he wants to work on Camden County projects. (*Id.* ¶ 38). As for ABC NJ, Plaintiffs allege that members of ABC are prohibited from working on County projects unless they accept the terms of the revised PLA. (Am. Compl. ¶ 42). This, ABC claims, inflicts an injury on its members. (*Id.*)

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that this Court lacks jurisdiction because Plaintiffs do not have standing and their claims are, at least in part, moot. (ECF No. 24-1, "County Mot." at 14–19); (ECF No. 25-4, "Trades Council Mot." at 19–23). Defendants also move to dismiss per Rule 12(b)(6), arguing that Plaintiffs have failed to state claims under the First and Fourteenth Amendments and the Sherman Act. (County Mot. at 8-14); (Trades Council Mot. at 23–27).

### B. Procedural History

On May 13, 2021, Plaintiffs Earle and Silverio filed suit against Camden County, CCIA, and the Trades Council, alleging that the original PLA violates the First and Fourteenth Amendments and federal antitrust laws. (Compl.). On August 16, 2021, Plaintiffs filed an Amended Complaint naming ABC NJ as a Plaintiff in this matter. (Am. Compl.). On September 7, 2021, Camden County and CCIA filed a motion to dismiss. (County Mot.). That same day, the Trades Council also filed a motion to dismiss. (Trades Council Mot.). Plaintiffs responded opposing both motions on October 4, 2021. (ECF No. 32, "Pl. Opp'n to Trades Council Mot."); (ECF No. 33, "Pl. Opp'n to County Mot."). The Trades Council filed a reply brief on October 6,

2021. (ECF No. 34, "Trades Council Reply"). Camden County and CCIA filed a reply brief on October 12, 2021. (ECF No. 36, "County Reply").

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction. "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis*, 824 F.3d at 346. A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.*

"In reviewing facial challenges to standing, [courts] apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon*, 846 F.3d at 633. Courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When considering a factual challenge, by contrast, "a court may weigh and consider evidence outside the pleadings." *Id.* (quotation marks omitted). "No presumptive truthfulness attaches to [the] plaintiff's allegations." *Davis*, 824 F.3d at 346 (cleaned up). Here, though Defendants do not specify the type of challenge they are making, the Court construes their motions as a facial attack on jurisdiction.

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*. 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

Plaintiffs ask the Court to declare that the original and revised PLAs violate the U.S. Constitution as well as federal antitrust laws, enjoin the enforcement of the PLAs, and award

6

damages to each Plaintiff. *See* (Am. Compl. ¶¶ 52–53, 65–66, 68). Defendants assert that the Amended Complaint must be dismissed because: (1) Plaintiffs lack standing; (2) Plaintiffs' claims are, in part, moot; and (3) Plaintiffs fail to state a claim for relief. *See* (Trades Council Mot.); (County Mot.). The Court begins with Defendants' jurisdictional challenges.

### A. Standing

"Under Article III of the United States Constitution, the power of the judiciary 'extends only to Cases and Controversies.'" *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)). "Standing and mootness are two distinct justiciability doctrines that limit our jurisdiction to cases and controversies in which a plaintiff has a concrete stake." *Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 475–76 (3d Cir. 2016). "Standing ensures that each plaintiff has the requisite personal interest at the commencement of the litigation, while mootness ensures that this interest continues throughout the duration of the case." *Id.* (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)) (cleaned up).[2]

To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury is concrete if it is "real, and not abstract," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (citation omitted), and

---

[2] Defendants argue that Plaintiffs' claims are partially moot. (Trades Council Mot. at 21–23). Because the Amended Complaint must be dismissed on standing grounds, however, the Court does not reach the parties' mootness arguments.

7

"imminent" if it is "certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

"[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Ramirez*, 141 S. Ct. at 2210; *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) ("The threat of injury must be sufficiently real and immediate." (internal quotation marks omitted)). "'[A]llegations of possible future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore*, 495 U.S. at 158). Notably, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). The same is true for declaratory relief. *Sherwin-Williams Co. v. Cnty. of Delaware, Pennsylvania*, 968 F.3d 264, 269 (3d Cir. 2020) ("Declaratory judgments are often forward-looking, but they are limited to cases and controversies in the constitutional sense.").

"As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *Ramirez*, 141 S. Ct. at 2207. Standing is determined at the time that the lawsuit commenced. *McNair*, 672 F.3d at 226 ("[S]tanding is determined at the outset of the litigation."). "[T]o survive a motion to dismiss for lack of standing, a plaintiff must allege facts that affirmatively and plausibly suggest that it has standing to sue. Speculative or conjectural assertions are not sufficient." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (internal quotation marks omitted). Further, "a plaintiff must 'demonstrate standing separately for each form of relief sought.'" *Ramirez*, 141 S. Ct. at 2210.

Here, Defendants assert that Plaintiffs have not alleged an injury in fact. (County Mot. 15–19); (Trade Council Mot. at 21–23). After closely parsing the Amended Complaint, the Court

discerns three potential categories of injuries relevant to the instant discussion: (1) past injury related to the use of "similar" PLAs in past County projects; (2) injury related to use of the PLA in the Whitman Park Project, specifically; and (3) risk of future injury related to the use of these same PLAs in future County projects. The Court will address each category of injury with respect to each Plaintiff.

### i. Earle Asphalt Co.

Earle asserts that it has been injured because the PLAs "have deterred and prevented Earle from obtaining work from the county defendants." (Am. Compl. ¶ 36). Earle also asserts that it will suffer future injury from the continued enforcement of the Camden PLAs, given it "is likely to bid on the defendants' public-works projects in the reasonably foreseeable future, and it is able and ready to apply for that work." (*Id.* ¶ 35).

Defendants argue that the original and revised PLAs could not have caused Plaintiffs to experience a past injury with respect to other County public-works projects because in these PLAs are, by New Jersey law, unique to this Project. (County Reply at 4). Moreover, Defendants assert that Earle has suffered no injury stemming from the Whitman Park PLAs, specifically, because Earle never submitted a bid to work on the Project. (County Mot. at 15–16); (Trades Council Mot. at 21). Finally, just as the PLAs could not have caused a past injury, Defendants argue that the PLAs could not cause future injury. (County Mot. at 16). Defendants stress that "New Jersey law renders [future injury] impossible as any new project will be subject to a separately negotiated PLA." (County Reply at 5); *see also* (County Mot. at 16–17).

Plaintiffs respond that their allegation that "Earle has been 'deterred and prevented' from obtaining work from the County on account of the defendants' project labor agreement" is sufficient to establish a past injury in fact. (Pl. Opp'n to County Mot. at 3) (citing Am. Compl. ¶

9

36); (Pl. Opp'n to Trades Council Mot. at 4). They assert that "[t]he complaint is not required to allege that Earle ever submitted a bid or requested information on a bid solicitation" for Plaintiffs to have standing. (Pl. Opp'n to County Mot. at 4); (Pl. Opp'n to Trades Council Mot. at 5) ("The complaint alleges that the defendants impose their PLA on projects that the Earle is 'likely' and 'able and ready' to bid upon, and the plaintiffs need not include additional factual details at this stage of the proceedings."). Last, Plaintiffs argue that "Earle is allowed to challenge the requirements of future project labor agreements that the County defendants will impose, even if the precise content of those future PLAs is not fully known yet." (Pl. Opp'n to County Mot. at 4). They contend that their allegation that Earle is "'likely to apply' for County projects 'in the reasonably foreseeable future' if the PLA is set aside or enjoined" is sufficient to allow for prospective relief. (Pl. Opp'n to County Mot. at 3); (Pl. Opp'n to Trades Council Mot. at 4).

With regard to past injury, the Court finds that Earle has not alleged sufficient facts to establish that it has suffered past injury as a result of the PLAs at issue here; Plaintiffs' claim that "Camden County had been imposing project labor agreements similar to the [PLAs] on other bid invitations for many years" does not demonstrate an injury in fact. (Am. Compl. ¶ 16). To start, Plaintiffs do not explain what "similar" means in this context. This is problematic, as New Jersey law requires that PLAs be negotiated on a project-by-project basis. *See* N.J.S.A. 52:38-3 ("A public entity may include a project labor agreement in a public works project on a project-by-project basis … the public entity shall either: directly negotiate in good faith a project labor agreement with one or more labor organizations; or condition the award of a contract to a construction manager upon a requirement that the construction manager negotiate in good faith a project labor agreement with one or more labor organizations."). Further, Plaintiffs do not provide examples of any such past PLAs, nor do they identify any prior public-works project in

10

which a PLA with these same injurious terms was implemented. While well-pleaded factual allegations must be interpreted in Plaintiffs' favor at the motion to dismiss stage, the Court does not credit "bald assertions" devoid of factual support. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."). Without a more concrete factual basis, the Court cannot find that Plaintiffs have suffered an injury stemming from the use of purportedly "similar" PLAs in past County projects.

With regard to injury related to the Whitman Park renovation, Earle does not explicitly allege that it would have bid on this Project, specifically, if not for the PLAs. Rather, their alleged injuries appear to flow from PLAs with unidentified terms connected to unknown past and future County projects unrelated to the renovation of Whitman Park. *See, e.g.*, (Am. Compl. ¶ 34) (stating that "Earle is ineligible to work on any public-works project subject to the defendants' PLAs" unless it agrees to the PLAs' terms); (*id.* ¶ 35) ("Earle … is likely to bid on the defendants' public-works projects in the reasonably foreseeable future, and it is able and ready to apply for that work. Earle therefore has standing to seek declaratory and injunctive relief against the continued enforcement of the defendants' project labor agreements."); (*id.* ¶ 36) ("Earle also has standing to seek damages because these PLAs have deterred and prevented Earle from obtaining work from the county defendants."). This is insufficient to show injury to these Plaintiffs stemming from the PLAs *in this Project*.

The Court finds support for this conclusion in *Associated Builders & Contractors of Western Pennsylvania v. Community College of Allegheny County*, No. CV 20-1933, 2022 WL 889891 (W.D. Pa. Mar. 25, 2022). As here, one group of plaintiffs in *Associated Builders*— contractors, their employees, and a Pennsylvania chapter of Associated Builders ("ABC II"

11

plaintiffs)—challenged the terms of a PLA entered into by a local borough and the Pittsburgh Regional Trades Council as part of a plan to construct a new public building. *Id.* at *1–4. The court concluded that the contractor-plaintiffs had properly alleged a past injury only because they had submitted supplemental declarations explicitly stating that they would have bid on the borough's project if not for the PLA. *Id.* at *8 (finding that the complaint "*alone* does not allege sufficient facts to demonstrate that the ABC II Contractors suffered past or future injury. However, upon review of the ABC II Complaint *along with the Declarations submitted in support*, the Court finds that the ABC II Contractors do allege sufficient facts to allege past injury since the ABC II Complaint alleges that the Contractors have been injured on account of the Borough PLA, *and the Declarations state that the Contractors would have submitted bids on the Project but for the Borough PLA*" (emphasis added)). In the instant matter, Plaintiffs have made no such claim.

With regard to future injury, the Court finds Earle's allegations wanting. To start, New Jersey law requires that PLAs be negotiated on a project-by-project basis if the use of a PLA is first determined to be necessary for that particular project. N.J.S.A. 52:38-3. Moreover, the challenged PLAs appear to apply only to on-site work related to the Whitman Park renovation. *See* (Am. Compl., Exs. 1 and 2, Art. 3 § 1) (defining the "scope of agreement" as "[t]he comprehensive construction program of activities associated with the proposed renovations and improvements to Whitman Park in Camden City, known as the 'Whitman Park Improvement Project' (the 'Project')" and stating that "[t]he scope of Project work is confined to the on-site Project work contained in the scope of the Project's final construction documents."). Therefore, even presuming that Earle is "ready and able" to apply to work on County projects "in the reasonably foreseeable future," (Am. Compl. ¶ 35), the Court cannot conclude that Plaintiffs will

likely suffer an injury in fact related to future County projects based on the PLAs at issue here, *cf. Associated Builders*, 2022 WL 889891, at *8 ("[[B]ecause the Borough PLA by its terms clearly indicates that it applies exclusively to the Project for which bids have already been accepted, the Court finds that the ABC II Contractors have failed to allege future harm based on that attached Borough PLA, and thus they have failed to establish standing to pursue prospective relief from the Borough in ABC II."). To the extent that Plaintiffs are attempting to attack a purported general policy or practice of including these particular terms in PLAs used in County projects, Plaintiffs have not provided adequate factual basis from which the Court could infer that any such policy or practice exists. *See Hart v. City of Philadelphia*, 779 F. App'x 121, 127 (3d Cir. 2019) ("[A] complaint must include more than labels and conclusions … and naked assertions devoid of further factual enhancement." (citing *Iqbal*, 556 U.S. at 678))

In this way, the instant case is distinguishable from *Christian Labor Association v. City of Duluth*, No. CV 21-227 (DWF/LIB), 2021 WL 2783732, at *4 (D. Minn. July 2, 2021). In *Christian Labor*, a Minnesota district court concluded that the plaintiffs—contractors, their employees, and an independent labor union—had standing to challenge municipal PLAs without identifying particular projects in which the use of the PLAs had caused or would likely cause the plaintiffs harm. *Id.* at *4–9 ("Because the Complaint alleges that the Employee Plaintiffs have been and continue to be categorically barred from participating in any of the Public Entities' PLA projects unless they consent to the PLAs' terms, they are clearly challenging the general practice of using PLAs that has deterred them from seeking or obtaining work; therefore, the Court finds it unnecessary that their allegations include specific projects and instances to defeat Defendants' motion to dismiss.").[3] However, at least two of the *Christian Labor* defendants

---

[3] Similarly, a recent case out of the Eastern District of Pennsylvania determined that, in the context of a mootness challenge, the plaintiffs were not "required to challenge each project on a piecemeal basis if, as they allege, all the

13

required the use of a PLA, which contained certain, standardized terms, in any project that surpassed a certain cost threshold, permitting a reasonable inference that PLAs identical to the challenged PLAs had been previously used by that defendant and would be reused imminently. *Id.* at *2–3. In contrast, New Jersey public entities must determine, using a variety of enumerated factors, whether a PLA is needed on a given project before a PLA can be implemented. *See* N.J.S.A 52:38-3. Moreover, unlike here, there was no statutory requirement that PLAs be negotiated on a project-by-project basis in *Christian Labor*. And, regardless, this Court is not bound by the decisions of other district courts.

      ii.   **Mr. Silverio**

Like his employer, Mr. Silverio contends that he has suffered an injury based on "past enforcement of the Camden County project labor agreement." (Am. Compl. ¶ 37). He claims that the Camden County PLAs "have prevented [him] from working on the County's public-works projects because he refuses to join or pay a Council-affiliated union." (*Id.*) Mr. Silverio also contends that he will suffer a future injury based on the continued enforcement of the PLAs, since the revised PLA still "compels [him] to obtain employment through the Council-affiliated unions' job-referral systems and accept the representation of a Council-affiliated union if he wants to perform any work on the counties' public-works projects." (*Id.* ¶ 38).

Defendants' standing arguments as recited above apply equally to Mr. Silverio. *Supra* Sec. III(A)(i). Defendants assert that "Plaintiffs may not sustain an action attacking the PLA attached to the Whitman Park bidding process on a theory that a different, future contract may

---

project labor agreements have the same operative provisions, and the City has a general policy of using project agreements regardless of the specific needs of the project." *See Road-Con Inc. v. City of Philadelphia*, 449 F. Supp. 3d 476, 484 (E.D. Pa. 2020) ("Plaintiffs clearly challenge the ongoing practice of including project labor agreements in City construction projects."). Here, the Court cannot conclude that the challenged PLAs have the same operative terms as past/future PLAs used in other public-works projects, and New Jersey law requires that public entities determine whether a PLA is necessary on a project-by-project basis, *see* N.J.S.A. 52:38-3.

14

cause them injury" because New Jersey law requires that PLAs be entered into on a project-by-project basis. (County Mot. at 16–17). They also stress that "[h]aving never even attempted to perform work under the PLA, [Plaintiffs] cannot reasonably argue that the same PLA somehow infringed upon their constitutional rights." (*Id.* at 15). Additionally, Defendants note that "[n]othing in the First Amended Complaint alleges that Plaintiff Silverio ever worked, much less applied for work, on a County public works project." (Trades Council Mot. at 21).

Plaintiffs contend that Mr. Silverio's allegations regarding "[t]he inconvenience of having to go through a union hiring hall, and the compelled association with a union that Mr. Silverio wants no part of, is more than enough to establish Article III injury." (Pl. Opp'n to Trades Council Mot. at 2). Plaintiffs further argue that Mr. Silverio is not required to allege that he or Earle previously applied for work on a County project. (*Id.* at 3); (Pl. Opp'n to County Mot. at 2). They assert that "[t]he allegations of the complaint … establish that the PLA has deterred Mr. Silverio's employer from seeking work on any of the County's public-works projects, and that is all that is needed to allege that Mr. Silverio has lost and is losing work opportunities on account of the PLA." (Pl. Opp'n to Trades Council Mot. at 3).

For substantially the same reasons that Earle has failed to allege standing, the Court finds that Mr. Silverio lacks standing. First, with regard to past injury, Plaintiffs' statement that the PLAs "have prevented Mr. Silverio from working on the County's public-works projects because he refuses to join or pay a Council-affiliated union[,]" (Am. Compl. ¶ 37), is another assertion unaccompanied by factual support. Second, Mr. Silverio, like his employer, never alleges that he would have sought, or would seek, to work on this Project but was deterred from doing so *in this instance* because of the terms of the County PLAs. Last, Mr. Silverio's allegations of future injury are also deficient. Given New Jersey's requirement that PLAs be negotiated and entered

15

into according to the needs of each individual project, *see* N.J.S.A 52:38-3,[4] the Court cannot, without more, infer that Mr. Silverio would be compelled to obtain employment through union hiring halls or accept union representation in order to work on future County projects based on the terms of the challenged PLAs in the instant matter.

### iii. Associated Builders & Contractors, New Jersey Chapter

An association can establish standing on behalf of the association's members. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977). *Hunt* states the test for associational standing:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

432 U.S. at 343.

To establish associational standing, the plaintiff association must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497–98, (2009); *see also New Jersey Physicians, Inc. v. President of the United States*, 653 F.3d 234, 241 (3d Cir. 2011). Speculation that "it is certainly possible—perhaps even likely—that one individual will meet all of these criteria . . . does not suffice." *Summers*, 555 U.S. at 499. Although the association must identify at least one member who has standing, "requests by an association for declaratory and injunctive relief do

---

[4] For these reasons, too, Mr. Silverio also fails to show that he has experienced, or will likely experience, inconvenience due to the PLAs' hiring hall requirement. *See Associated Builders*, 2022 WL 889891, at *9 n.7 (finding that the ABC II plaintiff-employees had not alleged harm "based on their being inconvenienced by having to seek work through the union hiring halls" where they "have submitted no Declarations to provide additional facts regarding their alleged past inconvenience" and "have not submitted Declarations regarding any inconvenience that they otherwise expect to suffer"). By his own allegations, Mr. Silverio has not sought, and will not seek, employment on public projects that require use of a union's hiring hall.

16

not require participation by individual association members." *Hospital Council of Western Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991).

As with the other Plaintiffs, ABC NJ asserts that its members will experience future injury from the continued enforcement of the County PLAs on the basis that the PLAs "prohibit the members of ABC New Jersey from working on the counties' construction projects unless they: (1) recognize a union that belongs to the Council as the exclusive representative of their employees—even though their employees have exercised their constitutional and statutory rights to decline union representation; and (2) hire employees from a union's job-referral systems rather than use their own employees to perform work on counties' projects." (Am. Compl. ¶ 42).

Defendants contend that ABC NJ fails to meet the first and third prongs of the associational standing test. (County Mot. at 17–18). With regard to the first prong, Defendants assert that ABC NJ's members would not have standing to sue unless they bid on the Project, since the PLAs at issue here apply only to the Whitman Park renovation. (County Mot. at 17) ("[I]f a PLA is desired for a future project, it must be renegotiated for that specific project.").

Plaintiffs reply that Defendants "are flatly wrong to say that ABC New Jersey's members must allege that they had previously bid on county projects that included the PLA" to have standing. (Pl. Opp'n to County Mot. at 5) (citing *Carney v. Adams*, 141 S. Ct. 493 (2020), for the proposition that "a plaintiff needs only to be 'able and ready' to apply for contracts from the County to establish standing"). Plaintiffs further argue that, regardless, "dismissal would remain improper because Mr. Silverio and Earle have indisputably alleged Article III standing, which allows ABC New Jersey to remain as a plaintiff so long as it seeks the same prospective relief that the other litigants are requesting." (*Id.*) (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020)).

The Court agrees with Defendants that ABC NJ has failed to establish that its members have standing to sue in their own right—the first requirement of associational standing.[5] Plaintiffs do not allege that ABC NJ members have applied for past County projects involving identical PLAs, nor do they allege that any of their members would have sought to work on the Whitman Park Project, specifically, but for the use of these PLAs. There are no facts presented that support Plaintiffs' assertion that ABC NJ members will be prevented or deterred from working on future County projects as a result of the terms of the Whitman Park PLAs, given the project-specific nature of PLAs in New Jersey. *See* N.J.S.A. 52:38-3. Thus, as with Silverio and Earle, ABC NJ has failed to demonstrate that its members have suffered, or will likely suffer, an injury in fact.

## IV.   CONCLUSION

Dismissals for lack of standing are without prejudice. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020) ("Dismissal for lack of standing reflects a lack of jurisdiction, so dismissal of [the] amended complaint should have been without prejudice."). For the reasons set forth above, Defendants' Motions to Dismiss (ECF Nos. 24, 25) are **GRANTED.** An appropriate order follows.


Dated: 06/23/2022                                              /s/Robert B. Kugler
                                                               ROBERT B. KUGLER
                                                               United States District Judge

---

[5] Plaintiffs do not indicate whether Mr. Silverio and Earle are members of ABC NJ. However, this omission is immaterial; ABC NJ cannot base its associational standing on the standing of the other plaintiffs in this case as the Court has determined Earle and Mr. Silverio have failed to establish that they have suffered an injury in fact.

18